Municipal Court of Cincinnati.

THE CITY OF CINCINNATI *v.* MIKE WAGNER.

Decided October 30, 1929.

*John D. Ellis,* city solicitor, *Harry J. Wernke* and *Robert McIntosh,* prosecuting attorneys, for the city of Cincinnati.
*Francis T. Bartlett,* for the defendant.

PICHEL, J.

The defendant was charged with the unlawful possession of liquor. The defendant appeared in court last Saturday and a trial was had. It developed during the hearing that the accused gutted hogs at the H. H. Meyer Packing Company, and had been locked up all night. He was unable to furnish bond or to employ counsel.

The liquor had been taken from his person, and the court, feeling that he was entitled to counsel, referred the matter to the Public Defender, appointed by the Legal Aid Society of Cincinnati, Attorney Francis T. Bartlett, and the court wishes to thank Mr. Bartlett for his careful attention to this matter.

It is through such agencies as the Legal Aid Society that the poor and defenseless have an opportunity to secure their rights in a court of law.

Yesterday morning, upon Mr. Bartlett appearing for the accused, he filed a written motion to suppress the use of the evidence taken from the accused, at the time of his arrest. The officer testified that the accused was under

the influence of liquor, and that he saw him stagger, and noticed his hand in a peculiar position over his coat; that he went up to the accused and asked him what the trouble with his arm was, and took ahold of his arm without being invited to do so by the defendant, and when he did so, the officer pressed his hand against the coat of the defendant, under which there was a bulge. After feeling the bottle in this way, the officer opened his coat, and found a pint bottle and a half-pint bottle underneath the defendant's coat. Previous to the arrest the officer had no knowledge whatsoever, of the defendant possessing liquor, and he had never seen the defendant before. The defendant is not a police character, and has never been arrested before.

In this case it is contended that the article or articles seized by the police, and which are now being held for the purpose of being offered in evidence, were taken from the accused in violation of the Constitution of Ohio, Article 1, Section 14. This provision reads as follows—"Search warrants and general warrants.—The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized."

The facts in this case are, that there was no search warrant; that the accused was stopped on the public highway, and the search there made. The question then arises, under what conditions can a person be searched by officers without a warrant, and whether or not the articles found can be used against him. It is clear that all searches without warrants are not unlawful, or in violation of the mandate of the Constitution. This principle was developed in the case of *Mortimer Dunning* v. *The City of Cincinnati*, 21 N. P., (N. S.), page 468 (affirmed by the Court of Appeals; motion to dismiss, petition in error sustained, 18 O. L. R., 64, 65 Bull. 186.) It is very interesting to note that the opinion in that case was written by the father of the new Criminal Code, Judge Thomas

H. Darby, of our Common Pleas Court. In that case the right of police officers to arrest persons who they find violating the law, is upheld, as well as the right of the officer at the same time to seize race horse slips which he recognized as such, while lying on a counter in front of the accused, and which the accused thrust into his pocket upon seeing the officer.

But it surely is not the law in this state that all searches and seizures made by an officer, without a warrant are lawful. As was said by Chief Justice Taft, in *Carroll* v. *United States*, 267 U. S., 132, at page 153, "it would be intolerable and unreasonable, if a prohibition agent were authorized to stop any automobile on the chance of finding liquor, and thus subject all persons using the highways to the inconvenience and indignity of such a search." There the Chief Justice emphasizes that the police have no right to indiscriminately search anyone on the mere venture and hope that they will find forbidden articles in their possession.

At page 158, the Chief Justice emphasizes the idea that the right to search is dependent on the reasonable cause the officer has, for the belief that the person has at that time in his possession, articles that offend against the law. Later, on page 159, the Chief Justice states that the case of *Houck* v. *State of Ohio,* 106 Ohio State, 195, "accords with this conclusion." Looking at *Houck* v. *State,* cited by the Chief Justice as to the Ohio rule, we find that the syllabus, No. 2 and 3, reads as follows: No. 2. "A search of an automobile by an officer and a seizure by him of intoxicating liquors then being possessed and transported in violation of law, without a search warrant, is authorized, though the officer has no previous knowledge of such violation, provided he acts in good faith and upon such information as induces the honest belief that the person in charge of the automobile is in the act of violating the law." No. 3. "A search and seizure under such circumstances is not unreasonable and therefore does not transgress Section 14, of Article I, of the Ohio Constitution." This decision was announced by the Supreme Court of Ohio, on December 19, 1922. On page

198 of the opinion, which, however, is not the law, it appears that the marshal who made the arrest knew Houck to be a violator, and the court said that it could not weigh the evidence to determine whether or not the magistrate was justified in finding that the evidence tended to show the good faith of the marshal, and that he was acting upon probable cause. Chief Justice Marshall does say, however, that "his testimony evidently convinced the magistrate" of this fact, and at page 199, Chief Justice Marshall quotes with approval, *Lambert* v. *United States*, 282 Federal Reporter 413, and he quotes from the syllabus of that case, which says, in brief, that a search of an automobile is not unreasonable when the acts of the defendant justify the officers in believing that the accused was at the time, transporting liquor. Further, this Federal case held that the defendant's actions, as disclosed by the evidence, were such as to warrant the prohibition officers in believing that the accused at the time was transporting liquor.

The City Solicitor in an opinion recently rendered to the head of the executive department, refers to the *Rosanski case*, 106 O. S., at page 442, which was decided by the Supreme Court just ten days after it decided the *Houck case*, and which decision appears in the same volume.

This was a decision involving the validity of search warrants, and the City Solicitor overlooked entirely what Chief Justice Marshall said at page 463, as follows: "It is the purpose of the Constitutions (State and Federal) to advance the cause of safe and orderly government, not to thwart and render it impossible. The facts and circumstances of many searches and seizures without process are reasonable under a reasonable construction of the Constitution, which would be unreasonable under an unreasonable construction. In other words, the reasonableness of a search and seizure is a question of mixed fact and law, depending upon the facts and circumstances of the case." Thus in these words, not mentioned in the opinion of the City Solicitor, it is found that it is is for the court to determine in the case under consideration, whether the

seizure is a reasonable one, which determination is one of both law and fact.

The question arises as to syllabus No. 4, in the *Rosanski case*, as to whether or not it changed the construction of the Constitution, and in Ohio as to whether or not all searches and seizures, except in *bona fide* dwellings of contraband, were proper. If this syllabus stated the absolute law, without modification, and without the further provision that the search must be a reasonable one, and I believe this idea must be read into the pronouncement of the Supreme Court, then it would have been ridiculous for Chief Justice Marshall to have added, as I have noted, at page 463, that "the reasonableness of a search and seizure is one of mixed fact and law." This indicates to the court that it is its duty to determine the reasonableness of the seizure. That view is emphasized to this court by the recent decision announced by the Supreme Court of Ohio, on June 19, 1929, in *Porello* v. *The State of Ohio*, 121 O. S. page 280, which will be found in the *Ohio Law Bulleton & Reporter*, under date of October 28, 1929. In syllabus No. 1, the Supreme Court again reiterates that a search of an accused is proper, although the officer has no previous personal knowledge of the fact of his carrying forbidden articles, if the officer acts *bona fide*, and upon such information as induces an honest belief that the person arrested is in the act of violating the law.

At page 284, Justice Allen says that the same doctrine was laid down in *Houck* v. *State, supra*, and she quotes the 2nd syllabus. At page 285, she says "here we have a search made of a person and of an automobile under circumstances that the police officers acted *bona fide* and upon information which induced an honest belief in them that the person arrested was in the act of violating the law." In my determination of this matter, although his opinion is not binding upon the courts of Ohio, in construing the Ohio constitutional provision against unlawful search and seizure, I cannot overlook the logical opinion of Chief Justice Taft. However, I do not feel that syllabus 4, of the *Rosanski case* meant to sweep aside in Ohio, all the constitutional rights against unlawful search

and seizure of a person, except in a *bona fide* private dwelling. If it did, it surely must have happened that in ten days from the time it announced the decision in the *Houck case,* that the members of the Supreme Court took an entirely different view of the constitution. In the *Houck case* they emphasized the necessity of the officers acting in good faith and upon such information as induced an honest belief that the person searched was violating the law, and as I have said, at page 463 in the *Rosanski case,* Chief Justice Marshall emphasized that the reasonableness of a search was a question of mixed fact and law. If the *Rosanski case* went so far as the City Soilcitor contends, then it would be strange that the Houck decision was permitted to appear in the bound volume, and still stranger that the court just a few days ago announces the same rule of the *Houck case,* in the *Porello case.* It would be a senseless thing for the Supreme Court both in the *Houck case* and the *Porello case,* to announce that the officer must act *bona fide,* and must honestly believe that the person arrested is in the act of violating the law, if it doesn't matter at all how contraband evidence is obtained. What would be the use at all in determining the manner of the seizure and what information the officer had, if the court could admit into evidence the seized articles in any event.

Adding to this idea, can it be said that the Supreme Court in the *Houck case* gives half a page at page 198 to a statement that there was a hearing by a magistrate as to the suspicious circumstances that Houck was seen under and the information had by the marshal and the finding of the magistrate, as to the reasonableness of the search, needlessly.

I say that it is still the law of Ohio that the Constitutional provisions must be met before the person or property of a citizen can be searched, and that still people may be secure in their persons, papers, and possessions against unreasonable searches and seizures.

The officers cannot ruthlessly and indiscriminately search persons and automobiles. They must act as stated in the *Porello case,* and in the *Houck cases, bona fide,* and upon

such information as induces an honest belief that the person arrested is in the act of violating the law. The court must consider what the actions of the defendant were before he was seized, to determine whether or not the officer was warranted in believing that he was at the time in the act of violating the law. The court has the right to consider all the circumstances that preceeded the search; as to who the accused was, what his occupation was at the time; whether or not he was a law-abiding citizen, or one who in the past had been engaged in law violations.

Coming to the present case and considering all of the surrounding circumstances, this court is convinced that the search made by the officers was not a reasonable one. The petitioner was doing nothing at the time that gave the officers even a suspicion that he was in the act of violating the law. He was going peaceably about his lawful business. There was no occasion for the officers to search the accused. He, to all intents and purposes was doing no wrong. He did have a bulge under his coat. What it was no one can say. He was not known to the police. He was not a bootlegger, and is not one who is seeking to use his constitutional rights against search and seizure, as a shield. He was not a police character, whose acts would be subject to surveillance. The officer did not act *bona fide*. He had no information which induced him to believe that the petitioner was in the act of violating the law. He acted on mere venture and exaggerated suspicion. Even in a case where a bottle was seen protruding from the pocket of a citizen, the Federal Circuit Court of Appeals in *Snyder* v. *United States*, 285 Fed. page 1, has held that the officer was not justified by his suspicion in making a search.

The court feels that there should be no new rules of constitutional construction in the enforcement of prohibition, and further that there is no need for a forced construction of the constitution. As to prohibition enforcement, there should be no hysteria present in the actions of courts or officers of the law. The same processes and the same rules of procedure should apply to the enforcement of the prohibition law as to that of other offenses.

In this case the officer just took a chance of finding liquor. He had no right to lay his hands on the body or property of the petitioner until he had the preliminary information that would induce in him an honest belief that the accused was violating the law. He did not have this information and belief, and the petition to suppress the introduction of the evidence will be granted, and the accused dismissed.